IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 JAN 26 PM 4: 26

CLERK
BY
DEPUTY CLERK

| | |
|---|---|
| MATTHEW DRUZBA, ) <br> as Executor of the Estate ) <br> of Cecile Druzba, Deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HONDA MOTOR COMPANY, LTD., ) <br> ) <br> and ) <br> ) <br> AMERICAN HONDA MOTOR ) <br> CO. INC., ) <br> Serve Registered Agent: ) <br>    Corporation Service Company ) <br>    100 N. Main Street, Ste. 2 ) <br>    Barre, Vermont 05641-4150 ) <br> ) <br> Defendants. ) | Case No. 2:22-CV-19 |

## PLAINTIFF'S COMPLAINT

COMES NOW Plaintiff Matthew Druzba, as Executor of the Estate of Cecile Druzba, by and through the undersigned counsel, and for his Complaint and causes of action against Defendants Honda Motor Company, Ltd. and American Honda Motor Co., Inc., states and alleges as follows:

1. Plaintiff Matthew Druzba is a citizen and resident of the State of Vermont.

2. Cecile Druzba was, at all times relevant, a citizen and resident of the State of Vermont, and was killed as a result of injuries sustained in a motor vehicle crash that occurred on March 22, 2019 on Vermont Route 22A in the Town of Addison, Addison County, Vermont.

1

3. Matthew Druzba is the duly appointed Executor and Fiduciary of the Estate of Cecile Druzba, deceased, as evidenced by the Letters of General Administration and Certificate of Appointment of Fiduciary attached hereto as Exhibits "A" and "B."

4. Plaintiff brings this action for wrongful death on behalf of the Estate, himself and all statutory beneficiaries in his capacity as Executor of the Estate of Cecile Druzba, Deceased.

5. Defendant Honda Motor Company, Ltd. (hereinafter "Honda Motor") is a Japanese corporation with its principal place of business in Tokyo, Japan, and may be served with process through applicable treaty.

6. Defendant Honda Motor is and was in the business of, *inter alia*, designing, engineering, manufacturing, distributing and selling vehicles under various brand names, including Honda and Acura vehicles, specifically including the Honda Accord.

7. At all times relevant to this Complaint, Defendant Honda Motor served a market for Honda Accord vehicles in the State of Vermont. Moreover, that product caused an injury in the State of Vermont to a Vermont resident. As such, in accordance with the Supreme Court's ruling in *Ford Motor Co. v. Montana Eighth Judicial District Court et al.*, this Court has personal jurisdiction over Defendant Honda Motor.

8. Defendant Honda Motor is subject to the general jurisdiction of this Court, in that it is a corporation conducting substantial business within the State of Vermont by maintaining continuous and systematic contacts with the State of Vermont, *including, but not limited to,* the following:

    a. Defendant Honda Motor is a global auto company that markets, sells, and services its products across the United States, including the sale of new and used Honda vehicles in the State of Vermont;

b. Defendant Honda Motor encourages a sale and resale market for its products, including the purchase and sale of new and used Honda vehicles in the State of Vermont;

c. Defendant Honda Motor maintains a significant number of Honda dealerships throughout the State of Vermont, through which Defendant Honda Motor urges the citizens of the State of Vermont to purchase its vehicles;

d. Defendant Honda Motor enhances its brand and increases its sales through the use of wide-ranging promotional activities, including television, print, online and direct-mail advertisements in the State of Vermont;

e. Defendant Honda Motor ensures that customers keep their Honda vehicles long past the date of sale through the use of original parts and repair facilities across the country, including in the State of Vermont;

f. Defendant Honda Motor touts that "America has been home to Honda associates since the company opened its first storefront office in Los Angeles in 1959. For more than 60 years, Honda has invested in its U.S. operations, created jobs, and contributed to the U.S. economy as a committed corporate citizen in America";

g. Defendant Honda Motor claims it established its first U.S. business operations, a storefront in Los Angeles, in 1959;

h. Defendant Honda Motor claims $21.8 billion cumulative investment in United States operations across 75 facilities;

i. Defendant Honda Motor claims it employs 31,000 workers in the United States, constituting a $2.4 billion payroll in 2019;

j. Defendant Honda Motor claims Honda dealerships provide 169,000 jobs in the United States;

k. Defendant Honda Motor claims 31 car and light truck models have been researched, designed and developed in the United States since 1991;

l. Defendant Honda Motor claims that, in the last year alone, Honda associates in the United States were issued 240 global patents;

m. Defendant Honda Motor claims United States plants manufactured nearly 2/3 of the Honda and Acura vehicles sold in America in 2019;

n. Defendant Honda Motor claims it builds vehicles, products, parts and components at 12 United States plants;

o. Defendant Honda Motor claims it has 14 R&D facilities in the United States that perform all aspects of product development;

p. Defendant Honda Motor claims it has produced 27.3 million cars and light trucks in the United States since 1982;

q. Defendant Honda Motor claims it produced 1.205 million cars and light trucks in the United States in 2019;

r. From 1976 through 2018, over 13.5 million Honda Accords were sold in the United States, accounting for over 25% of Honda brand vehicles sold in the United States;

s. In 2013, 366,678 new Honda Accords were sold in the United States;

t. Defendant Honda Motor sold and delivered its vehicles to persons, firms, or corporations via its distributors, dealers, wholesalers, brokers and others with knowledge or reason to foresee that said vehicles would be shipped and used in

> interstate commerce and would reach the market of Vermont users or consumers; and/or
>
> u. Defendant Honda Motor transports its new and used vehicles on Vermont highways and railways for distribution throughout the State of Vermont and the United States.

9. Defendant Honda Motor's business contacts with the State of Vermont are so continuous and systematic as to render it essentially at home in Vermont, and as such, this Court may exercise general jurisdiction over Defendant Honda Motor.

10. Defendant Honda Motor has purposely availed itself of the privilege of conducting business in the State of Vermont, and has thereby consented to the jurisdiction of this Court. Defendant Honda Motor's conduct and connection with the State of Vermont are such that it could reasonably anticipate being haled into a court in the State of Vermont.

11. Defendant Honda Motor is subject to the specific jurisdiction of this Court in that the vehicle at issue, a 2013 Honda Accord LX (VIN: 1HGCR2F33DA110171) (hereinafter "Subject Accord"):

> a. Was designed, tested and manufactured by or on behalf of Defendant Honda Motor;
>
> b. Was distributed by or on behalf of Defendant Honda Motor into the stream of commerce such that it reached the State of Vermont;
>
> c. Was garaged in the State of Vermont;
>
> d. Was serviced in the State of Vermont;
>
> e. Was involved in a motor vehicle accident in the State of Vermont; and/or
>
> f. Caused fatal injuries to Cecile Druzba in the State of Vermont.

12. Defendant Honda Motor, through the acts of its employees or agents, has submitted itself to the jurisdiction of this Court pursuant to the State of Vermont's long-arm statute, 12 V.S.A. § 913(b), through its activity in the State or the contact/activity imputable to it.

13. Defendant American Honda Motor Co., Inc. (hereinafter "American Honda") is a California corporation with its principal place of business in Torrance, California, and may be served with process through its registered agent at the above-listed address.

14. Defendant American Honda is and was in the business of, *inter alia*, designing, engineering, manufacturing, distributing and selling vehicles under various brand names, including Honda and Acura vehicles, specifically including the Honda Accord.

15. At all times relevant to this Complaint, Defendant American Honda served a market for Honda Accord vehicles in the State of Vermont. Moreover, that product caused an injury in the State of Vermont to a Vermont resident. As such, in accordance with the Supreme Court's ruling in *Ford Motor Co. v. Montana Eighth Judicial District Court et al.*, this Court has personal jurisdiction over Defendant American Honda.

16. According to Honda's Digital FactBook, Defendant American Honda is responsible for sales, marketing, service, distribution, import and export of Honda and Acura products in the United States. As such, Defendant American Honda is subject to the general jurisdiction and specific jurisdiction of this Court, in that it is a corporation conducting substantial business within the State of Vermont by maintaining continuous and systematic contacts with the State of Vermont, *including, but not limited to,* the matters set forth above by, on behalf of, or in connection with Defendant Honda Motor.

17. Defendant American Honda, through the acts of its employees or agents, has submitted itself to the jurisdiction of this Court pursuant to the State of Vermont's long-arm statute, 12 V.S.A. § 913(b), through its activity in the State or the contact/activity imputable to it.

18. Pursuant to 28 U.S.C. § 1332, this Court has subject-matter jurisdiction over this civil action, as the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the parties.

19. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to this claim occurred within this judicial district, in that the motor vehicle crash that is the subject of this action occurred in Addison County, Vermont, a county within this District.

20. Plaintiff's claims against Defendants Honda Motor and American Honda are timely, in accordance with tolling agreements entered into on behalf of Plaintiff and Defendants Honda Motor and American Honda, which served to toll any and all applicable statutes of limitations.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

21. Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

22. On or about March 22, 2019, at approximately 6:55 a.m., Cecile Druzba was operating the Subject Accord, driving southbound on Vermont Route 22A in the Town of Addison, Vermont, approaching a driveway of a residence located at 4582 Vermont Route 22A.

23. At said time and place, Ian LaBounty was operating a 2013 Subaru Imprezza (VIN: JF1GJAC69DH027633) (hereinafter "Imprezza"), driving northbound on Vermont Route 22A in

the Town of Addison, Vermont, approaching a driveway of a residence located at 4582 Vermont Route 22A.

24. Mr. LaBounty fell asleep or otherwise failed to maintain control of the Imprezza, allowing it to cross the center line of the roadway into the southbound lanes of Vermont Route 22A where it struck the Subject Accord (hereinafter "Subject Crash").

25. During the Subject Crash, the driver's front corner of the Imprezza struck the driver's front corner of the Subject Accord.

26. The forces of the Subject Crash on the Subject Accord were within those found in testing pursuant to the Federal Motor Vehicle Safety Standards, and less than that found in NHTSA's New Car Assessment Program testing and testing by the Insurance Institute for Highway Safety.

27. The design of the Subject Accord failed to incorporate adequate and sufficient structure outboard of the driver's side frame rail and at the vehicle's driver's door to deflect, absorb and reinforce in the event of impact, which allowed the Imprezza to travel down the driver's side of the Subject Accord so as to strike, crush and impinge upon the driver's area of the occupant compartment of the Subject Accord.

## COUNT I – STRICT LIABILITY (THE HONDA DEFENDANTS)

28. Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

29. At all times relevant hereto, Defendants Honda Motor and American Honda (hereinafter collectively referred to as "The Honda Defendants") were actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and selling the Honda Accord, amongst other vehicles.

30. Prior to the Subject Crash, The Honda Defendants designed, manufactured, assembled, inspected, tested, distributed, placed into the stream of commerce and sold the Subject Accord in the normal course of business for use by the general public.

31. At the time the Subject Accord left the control of The Honda Defendants, the Subject Accord was defective and unreasonably dangerous when put to reasonably anticipated use.

32. The Subject Accord was defective and unreasonably dangerous due to its lack of reasonable and necessary occupant protection, *including, but not limited to*, the following:

   a. The Subject Accord was not crashworthy in reasonably foreseeable accidents, including oblique and overlap frontal crashes;

   b. The Subject Accord had inadequate and unsafe front and driver's side structure in oblique and overlap frontal crashes;

   c. The front structure and driver's side structure, and their associated component parts, failed to properly protect Cecile Druzba in a reasonably foreseeable crash;

   d. The front structure and driver's side structure, and their associated component parts, lacked adequate design to assure proper performance in a reasonably foreseeable crash;

   e. The front structure and driver's side structure, and their associated component parts, failed to provide sufficient strength so as to deflect an impacting vehicle, thereby allowing a loss of physical integrity and compromise of the occupant compartment in a reasonably foreseeable crash;

   f. The front structure and driver's side structure, and their associated component parts, failed to provide sufficient strength so as to absorb the forces of an

impacting vehicle, thereby allowing a loss of physical integrity and compromise of the occupant compartment in a reasonably foreseeable crash;

g. The front structure and driver's side structure, and their associated component parts, failed to include reinforcements necessary to provide sufficient strength to prevent a loss of physical integrity and compromise of the occupant compartment in a reasonably foreseeable crash;

h. The design and manufacture of the front structure and driver's side structure, and their associated component parts, failed to incorporate designs and/or devices (e.g., extended bumper beam; bumper beam reinforcement; engagement structures attached to the frame rail; adequate and sufficient shotgun; strengthening of the suspensions and drive components of the front axle; occupant compartment reinforcement; adequate and sufficient beltline stiffener; adequate and sufficient side impact door beam; adequate and sufficient lower reinforcement plate; use of higher strength and/or thicker gauge steel; alternative methods of component securement) to prevent a loss of physical integrity and compromise of the occupant compartment in a reasonably foreseeable crash;

i. The front structure and driver's side structure, and their associated component parts, lacked adequate testing and/or inspection before the vehicle was distributed and sold so as to ensure it was reasonably suitable for their intended purpose and provided adequate occupant protection in a reasonably foreseeable crash;

j. The vehicle, including its front structure and driver's side structure, were not subjected to adequate and sufficient Failure Mode Effects Analysis or Finite Element Analysis;

k. The vehicle lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition of the front structure and driver's side structure, and their associated component parts, or the risk of injury from such hazardous condition; and/or

l. In other respects unknown to Plaintiff at this time, but which may become known prior to trial.

33. The Subject Accord was expected to and did reach the hands of the consumer, including Cecile Druzba, without substantial change or modification, and was in substantially the same condition on the day of the Subject Crash as it was when it left the possession and control of The Honda Defendants.

34. The Subject Accord was used by Cecile Druzba in a reasonably anticipated manner.

35. The Honda Defendants knew or should have known that the Subject Accord would be used without inspection for defect and represented that the Subject Accord could be safely used for the ordinary purposes for which it was intended.

36. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Accord, the occupant compartment in the area of Cecile Druzba was significantly compromised, further limiting or eliminating the benefits of the Subject Accord's passive restraint features, causing or contributing to cause Cecile Druzba to sustain fatal injuries after great pain and suffering.

37. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Accord, damages were sustained for which Plaintiff is authorized to recover on behalf of the Estate, himself and/or the statutory beneficiary class pursuant to 14 V.S.A. §§ 1451 *et seq.* and 1942 *et seq.*, including the damages arising from Cecile Druzba's death and the damages sustained by Cecile Druzba between the time of the Subject Crash and her ultimate death, *including, but not limited to*, the following:

   a. Medical and funeral expenses arising from the care provided to and death of Cecile Druzba;

   b. Compensation for the lost income and earning capacity of Cecile Druzba that would have benefited Plaintiff and/or the next of kin;

   c. Other economic support and services provided by Cecile Druzba that would have benefited Plaintiff and/or the next of kin to the present and in the future;

   d. The loss of love and companionship; care, nurture, and protection; and the loss of the parent-child relationship that Plaintiff and/or the next of kin would have expected to the present and in the future;

   e. Plaintiff's and the next of kin's grief and mental anguish they have suffered to the present and will probably suffer in the future; and

   f. The conscious pain and suffering of Cecile Druzba.

38. The Honda Defendants acted recklessly or wantonly without regard for Cecile Druzba's (as well as Plaintiff's and the next of kin's) rights in the design, testing, manufacture, marketing and sale of the defective and unreasonably dangerous Subject Accord, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others from like conduct.

WHEREFORE, Plaintiff prays that this Court enter judgment against The Honda Defendants for a reasonable sum of compensatory damages, for punitive damages in such sum as will serve to punish Defendants and deter Defendants and others from engaging in like conduct, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT II – NEGLIGENCE (THE HONDA DEFENDANTS)

39. Plaintiff adopts and incorporates by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

40. At all times relevant hereto, The Honda Defendants were actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and selling Subject Accord vehicles.

41. As motor vehicle designers, manufacturers, distributers and sellers, The Honda Defendants knew that users of their vehicles could be involved in motor vehicle collisions, and the extent of their injuries would frequently be determined by the design and construction of their vehicles, including the Subject Accord in this case.

42. The Honda Defendants had a duty to exercise reasonable care in the design, testing, manufacture and sale of the Subject Accord.

43. The Honda Defendants breached their duty to exercise reasonable care in the design, testing, manufacture and sale of the Subject Accord in multiple respects, *including, but not limited to*:

    a. The Subject Accord was not crashworthy in reasonably foreseeable accidents, including oblique and overlap frontal crashes;

b. The Subject Accord had inadequate and unsafe front and driver's side structure in oblique and overlap frontal crashes;

c. The front structure and driver's side structure, and their associated component parts, failed to properly protect Cecile Druzba in a reasonably foreseeable crash;

d. The front structure and driver's side structure, and their associated component parts, lacked adequate design to assure proper performance in a reasonably foreseeable crash;

e. The front structure and driver's side structure, and their associated component parts, failed to provide sufficient strength so as to deflect an impacting vehicle, thereby allowing a loss of physical integrity and compromise of the occupant compartment in a reasonably foreseeable crash;

f. The front structure and driver's side structure, and their associated component parts, failed to provide sufficient strength so as to absorb the forces of an impacting vehicle, thereby allowing a loss of physical integrity and compromise of the occupant compartment in a reasonably foreseeable crash;

g. The front structure and driver's side structure, and their associated component parts, failed to include reinforcements necessary to provide sufficient strength to prevent a loss of physical integrity and compromise of the occupant compartment in a reasonably foreseeable crash;

h. The design and manufacture of the front structure and driver's side structure, and their associated component parts, failed to incorporate designs and/or devices (e.g., extended bumper beam; bumper beam reinforcement; engagement structures attached to the frame rail; adequate and sufficient

shotgun; strengthening of the suspensions and drive components of the front axle; occupant compartment reinforcement; adequate and sufficient beltline stiffener; adequate and sufficient side impact door beam; adequate and sufficient lower reinforcement plate; use of higher strength and/or thicker gauge steel; alternative methods of component securement) to prevent a loss of physical integrity and compromise of the occupant compartment in a reasonably foreseeable crash;

i. The front structure and driver's side structure, and their associated component parts, lacked adequate testing and/or inspection before the vehicle was distributed and sold so as to ensure it was reasonably suitable for their intended purpose and provided adequate occupant protection in a reasonably foreseeable crash;

j. The vehicle, including its front structure and driver's side structure, were not subjected to adequate and sufficient Failure Mode Effects Analysis or Finite Element Analysis;

k. The vehicle lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition of the front structure and driver's side structure, and their associated component parts, or the risk of injury from such hazardous condition; and/or

l. In other respects unknown to Plaintiff at this time, but which may become known prior to trial.

44. As a direct and proximate result of the negligent acts and/or omissions of The Honda Defendants, the occupant compartment in the area of Cecile Druzba was significantly

compromised, further limiting or eliminating the benefits of the Subject Accord's passive restraint features, causing or contributing to cause Cecile Druzba to sustain fatal injuries after great pain and suffering.

45. As a direct and proximate result of the negligent acts and/or omissions of The Honda Defendants, damages were sustained for which Plaintiff is authorized to recover on behalf of the Estate, himself and/or the statutory beneficiary class pursuant to 14 V.S.A. §§ 1451 *et seq.* and 1942 *et seq.*, including the damages arising from Cecile Druzba's death and the damages sustained by Cecile Druzba between the time of the Subject Crash and her ultimate death, *including, but not limited to,* the following:

   a. Medical and funeral expenses arising from the care provided to and death of Cecile Druzba;

   b. Compensation for the lost income and earning capacity of Cecile Druzba that would have benefited Plaintiff and/or the next of kin;

   c. Other economic support and services provided by Cecile Druzba that would have benefited Plaintiff and/or the next of kin to the present and in the future;

   d. The loss of love and companionship; care, nurture, and protection; and the loss of the parent-child relationship that Plaintiff and/or the next of kin would have expected to the present and in the future;

   e. Plaintiff's and the next of kin's grief and mental anguish they have suffered to the present and will probably suffer in the future; and

   f. The conscious pain and suffering of Cecile Druzba.

46. The Honda Defendants acted recklessly or wantonly without regard for Cecile Druzba's (as well as Plaintiff's and the next of kin's) rights in the design, testing, manufacture,

marketing and sale of the defective and unreasonably dangerous Subject Accord, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others from like conduct.

WHEREFORE, Plaintiff prays that this Court enter judgment against The Honda Defendants for a reasonable sum of compensatory damages, for punitive damages in such sum as will serve to punish Defendants and deter Defendants and others from engaging in like conduct, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all allegations, claims and causes of action asserted herein.

January 26, 2022                                       Respectfully submitted,

**DOWNS RACHLIN MARTIN PLLC**

Robert B. Luce
Courthouse Plaza
199 Main Street, P.O. Box 190
Burlington, VT 05402
T: 802-863-2375
F: 802-862-7512
bluce@drm.com

*Of counsel:*

David A. Brose (*pro hac vice* forthcoming)
Langdon & Emison
911 Main Street
Lexington, MO 64067
T: 660-259-6175
F: 660-259-4571
david@lelaw.com

**ATTORNEYS FOR PLAINTIFF**